UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY R. SCHWINDT,<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs*. | ) | 1:11-cv-00110-JMS-MJD |
| | ) | |
| HOLOGIC, INC.<br>SUROS SURGICAL SYSTEM, INC.<br>MICHAEL E. MILLER and<br>JOSEPH L. MARK,<br>    *Defendants*. | )<br>)<br>) | |

## ORDER

Plaintiff Jeffrey Schwindt brings this action against Defendants Hologic, Inc., Suros Surgical System, Inc., Michael Miller, and Joseph Mark to correct a patent concerning a breast biopsy device. Presently before the Court are two motions to dismiss, one filed by Hologic, Inc. and Suros Surgical System, Inc., (the "Defendant Corporations") and the other filed by Michael Miller and Joseph Mark.

### I.
#### STANDARD OF REVIEW

The Federal Rules of Civil Procedure impose only a notice-pleading requirement for complaints. Fed. R. Civ. Pro. 8. Thus, "[s]pecific facts are not necessary; the [plaintiff] need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) (alteration omitted)) (per curium). Nonetheless, "a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (synthesizing *Erickson* and *Twombly*). In that circumstance, a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6) is proper. A motion filed under that rule asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544). For the purposes of that rule, the Court will ignore legally conclusory allegations. *Id.* at 1949-50 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (quotation omitted)). The Court will, however, give the complaint the benefit of reasonable inferences from all non-conclusory allegations. *See id.*

## II.
### WELL-PLEADED FACTS IN THE COMPLAINT

In the late 1990s, Defendants Miller and Mark worked together at a company called Promex, where they developed an idea for a hand-held medical device that would take minimally-invasive biopsies of potentially cancerous breast tissue. [Dkt. 12 at ¶¶ 4-5, 14-20.] In 2000, Defendants Miller and Mark contacted Plaintiff about their breast biopsy system, [*id.* at ¶ 14], and asked him to build a pneumatic circuit (an interconnected set of components that converts air into energy for machines) for the system, [*id.* at ¶¶ 19-20].

Subsequently, Plaintiff developed the pneumatic circuit, designed additional prototypes of the pneumatic circuit that controlled the hand-held piece of Defendant Mark's and Defendant Miller's device, and recommended numerous design changes to their original hand-held piece. [*Id.* at ¶ 23.] In addition to the pneumatic circuit, Plaintiff invented other components of the biopsy device and the console, and built prototypes in accordance with many of those components. [*Id.* at ¶ 56.] Plaintiff was the first to reduce these inventions to practice. [*Id.* at ¶ 43.] Plaintiff created Air Systems Engineering ("ASE"), which became the control console

manufacturer of the new device, which included his pneumatic circuit, among other developments Plaintiff had made. [*Id.* at ¶¶ 1, 24, 34.]

In 2000, Defendants Miller and Mark founded Suros, a medical device manufacturer, 2000, [*id.* at 54], and asked Plaintiff to build a prototype console for use with their original device. [*Id.* at ¶ 25.] Plaintiff, then working for ASE, invented other elements regarding the device console and built prototypes in accordance with many of those components. [*Id.* at ¶ 26.]

In late 2000, Plaintiff asked Defendant Miller about applying for patent protection for the pneumatic controls, circuits, pinch valve, air motor, console and related concepts for the biopsy device. [*Id.* at ¶ 27.] Defendant Miller falsely told Plaintiff that the controls, circuits, console and related concepts could not be patented. [*Id.*]

Unbeknownst to Plaintiff, Defendants Miller and Mark "already started taking [Plaintiff's] inventions and incorporated the drawings, designs, process and ideas into their own patent applications." [*Id.* at ¶ 28.] Defendants Miller and Mark applied for a patent (the "'022 application") naming Defendants Miller, Mark and others as inventors, but not naming Plaintiff, despite the fact that Plaintiff was "a significant contributor to many of the features claimed in the '022 application." [*Id.* at ¶ 29.]

Sometime prior to filing the '022 application in 2000, Defendants Miller and Mark assigned their rights to the '022 application to Defendant Suros. [*Id.* at ¶¶ 29.] In 2003, Plaintiff, working in partnership with ASE, began shipping the consoles directly to Defendant Suros' customers. [*Id.* at ¶¶ 30, 34.]

Defendant Suros' '022 application issued on July 6, 2004 as U.S. Patent No. 6,758,824 ("the '824 patent"). The '824 patent is the parent of U.S. Patent No. 6,638,235 (the "'235 patent") and others that rely on Plaintiff's drawings, designs, process and ideas. [*Id.* at ¶ 31.]

3

Plaintiff learned that he was not listed as an inventor on the '824 patent "not long" after the patent issued in 2004. [*Id*. at ¶ 32.] On September 8, 2004, Plaintiff filed his own patent application (the "'395 application"), which copied the first 37 claims from the '824 patent, and named Plaintiff as a co-inventor. [*Id*. at ¶¶ 32-33; *see also* Dkt. 1-3.] With the '395 application, Plaintiff also requested that the United States Patent and Trademark Office ("USPTO" or the "Patent Office") declare an interference against the '824 patent "in an attempt to correct Miller and Mark's conduct relating to the '824 patent." [Dkt. 12 at ¶ 32.]

In 2004, after Plaintiff filed the '395 application, Defendant Suros stopped using ASE as its console manufacturer. [*Id*. at ¶ 34.] In 2006, Hologic, a company that sells diagnostic and medical imaging equipment, acquired Suros, largely because the merger included the rights to the '824 patent, [*id*. at ¶¶ 2, 35, 37]; Defendants Miller and Mark received in excess of $30 million each from the merger, [*id.* at 41]. Defendants Miller and Mark directed Defendant Suros to represent that Defendant Suros owned all the rights, title and interest to the '824 Patent—through their ownership, management and control of Defendants Suros, Defendants Miller and Mark made "false statements, threats, intimidation, deception and misrepresentations," so they could use Plaintiff's inventions for their own profit. [*Id.* at ¶¶ 51-53.]

Defendants Hologic and Suros continue to profit from intentionally failing to mention Plaintiff in the '824 patent and subsequent patents that rely upon it or are continuations of it (including a patent issued in 2003 and another issued in 2009). [*Id.* at ¶ 51.]

On May 13, 2011, the USPTO declared an interference proceeding concerning the '824 patent; the interference claim is still pending at the USPTO. [*Id.* at ¶ 33.] Plaintiff filed this suit on January 21, 2011, naming Defendants Miller and Mark, [dkt. 1]; in March 2011, Plaintiff named Defendants Hologic and Suros as Defendants in his Amended Complaint. [Dkt. 12.]

# III.
## DISCUSSION

Plaintiff's Amended Complaint raises four claims, all stemming from allegations that Plaintiff was not properly named as a co-inventor on the '824 patent. Count I seeks correction of inventorship of the '824 Patent under 35 U.S.C. § 256; Counts II-IV are state law claims of statutory fraud, deception and misrepresentation (Count II), unjust enrichment (Count III), and accounting (Count IV). Defendants move to dismiss Plaintiff's Amended Complaint in its entirety pursuant to Federal Rules 12(b)(1) and 12(b)(6). The parties agree that the Court should stay further proceedings on any surviving claims pending the resolution of the interference proceedings currently before the USPTO.

### A) Count I as Against Defendants Miller and Mark[1]

Defendants argue that the Court does not have subject matter jurisdiction because there is no case or controversy between Plaintiff and Defendant Miller or Defendant Mark; that even if there is subject matter jurisdiction, Plaintiff fails to state a claim against Defendants Miller and Mark; and that, to the extent that Plaintiff does state a claim, the Court should not pass on the merits of Count I until the USPTO makes its own determination of inventorship.

#### 1. Subject Matter Jurisdiction

Defendants Mark and Miller first argue that the Amended Complaint should be dismissed for lack of subject matter jurisdiction because neither Defendant falls within the purview of 28 U.S.C. § 256, which authorizes the Court to order correction of a patent as long as all concerned parties have an opportunity to be heard. Specifically, they argue, Defendants Miller and Mark are not concerned parties because they assigned away their rights to the '824 patent and thus

---

[1] The Defendant Corporations do not move to dismiss Count I but agree that it should be stayed pending resolution of the interference proceedings pending before the USPTO.

have no economic interest in the patent. Because Defendants Miller and Mark are not concerned, they argue, they do not fall within the scope of a § 256 claim.[2]

As an initial matter, Defendants' argument misapprehends the nature of subject matter jurisdiction, which concerns the Courts power to hear a case—"obscuring whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 512 (2006). The Supreme Court has called such arguments "drive-by jurisdictional" challenges that have no merit. *Id.*

To clarify, in the instant case, Court has subject matter jurisdiction over this entire case pursuant to 28 U.S.C. §1338 because it is a civil action related to patents, and under 28 U.S.C. § 1331 because it is a civil action arising under 35 U.S.C. § 256. *See, e.g., Nova Design Build, Inc. v. Grace Hotels, LLC*, --- F.3d ---, 2011 WL 3084929 (7th Cir. 2011); *see also MCV*, 870 F.2d at 1570, 10 USPQ2d at 1289 ("[Section 256] prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard. If that is done, there is subject matter jurisdiction in the district court over a dispute raising solely a joint inventorship issue among contending co-inventors.") Whether Defendants Miller and Mark are proper parties in interest is a secondary question, which the Court, having subject matter jurisdiction, will consider under Rule 12(b)(6) below.

---

[2] Defendants Miller and Mark also argue in their opening brief that "subject matter jurisdiction is also lacking where [Plaintiff] could have no reasonable apprehension of being sued by Defendants Miller and Mark, who have never indicated any intention of bringing an inventorship action against [Plaintiff]. . . ." [Dkt. 39 at 7-10.] As Plaintiff points out, however, Defendants Miller and Mark wrongly employ a patent infringement standard to arrive at this conclusion. Given that Defendants abandon this position in reply, the Court gathers that they recognized their mistake and will not further address this argument. *See, e.g., Blair v. Graham Correctional Center*, 4 F.3d 996, *3 (7th Cir. 1993).

### 2. Case or Controversy

Next, Defendants Miller and Mark argue that Plaintiff lacks Article III standing to bring this suit against them because there is no true case or controversy between them. [Dkt. 45 at 4; *see also* dkt. 12 at ¶ 29.] A plaintiff suing within the purview of any federal statute must still meet constitutional standing requirements to invoke it. *See, e.g., Chou v. University of Chicago*, 254 F.3d 1347, 1358-59 (Fed. Cir. 2001). In other words, a plaintiff must show that he has suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision. U.S. Const. Art. III, § 2. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992).

Despite Defendant Miller's and Mark's argument that they are not proper defendants because they lost any economic interest in the patent by virtue of assigning it to Defendant Suros, the Court finds that Plaintiff meets the "undemanding" standing requirements of Article III standing, *see, e.g., Access Living of Metropolitan Chicago v. Chicago Transit Authority*, 2001 WL 492473 (N.D. Ill. 2001). Indeed, Plaintiff's Amended Complaint asserts that, despite his significant contributions to the underlying invention, Plaintiff was intentionally left off the list of inventors of the '824 patent, from which Defendants Miller and Mark commercialized and profited. Plaintiff further alleges that he was deprived of an interest in proceeds from Defendants' use of the '824 patent, including the merger with Defendant Hologic, [dkt. 12 at ¶ 55], which is directly traceable to Defendants' alleged misconduct in failing to name Plaintiff as a co-inventor and in subsequently misrepresenting its claimed invention. [*id.* at ¶¶ 50-55, 67.] Plaintiff's federal claim asks this Court to declare Plaintiff as a joint inventor of the '824 patent. [*Id.* at 11.] The Court finds that Plaintiff meets the Article III standing requirements.

Finally, Defendants Miller and Mark argue that the Court lacks subject matter jurisdiction over Plaintiff's claim under the Declaratory Judgment Act because there is no case or controversy between Plaintiff and Defendant Miller or Defendant Mark.[3] However, even if the Court did not have federal jurisdiction under § 1338, which it does here, a § 256 suit can stand by itself without seeking jurisdiction pursuant to the Declaratory Judgment Act. *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1325 (Fed. Cir. 2009) ("We have treated requests for declaratory relief relating to inventorship as functional equivalents of actions formally brought pursuant to § 256…Given the true nature of [Plaintiff's] declaratory judgment claims, we will accept that [Plaintiff] pleaded an action for correction of inventorship pursuant to § 256."); *see also MCV*, 870 F.2d at 1571. The Court therefore rejects Defendant Miller's and Defendant Mark's jurisdictional arguments.

3. **Failure to State a Claim**

First, Defendants Miller and Mark argue that Count I of Plaintiff's Amended Complaint should be dismissed as against them because it does not comply with the notice requirements of Rule 8(a)—the basis for relief is simply the "patent laws of the United States, 35 U.S.C. § 101, *et. seq*." The notice pleading standard, however, does not require a plaintiff to plead specific legal theories in his complaint; in fact, even naming the wrong theory is not fatal and can withstand a motion to dismiss. *Smith v. Medical Benefit Administrators Group, Inc.*, 639 F.3d 277, 284 (7th Cir. 2011); *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992) (complaint need not identify a legal theory and can even identify an incorrect theory; "a court

---

[3] Plaintiff argues at length that there is a case or controversy simply because "Defendants have disagreed for many years as to Schwindt's claim that he should have been listed as a co-inventor on the '824 patent." [Dkt. 42 at 7.] This argument misses the mark, because the length of time two parties have been arguing over something is not the standard for a case or controversy. *See, e.g.*, *Lujan*, 504 U.S. at 560.

8

should ask whether relief is possible" in a notice pleading jurisdiction because complaints "initiate the litigation but recede into the background as the case progresses"). Additionally, Plaintiff clarifies in response that he brings his federal claim under 35 U.S.C. § 256. [Dkt. 42 at 7.] The Court therefore finds that Plaintiff's Amended Complaint is not deficient under Rule 8(a).

Defendants further argue that Plaintiff fails to state a claim under §256 because neither Defendant Miller nor Defendant Mark has any economic interest in the '824 patent. [Dkt. 45 at 4, *see also* dkt. 12 at ¶ 29.] More precisely, Defendants argue that because under *Chou v. University of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001), parties with an economic interest are entitled to the opportunity to be heard in inventorship cases, it follows that those parties without an economic interest are not proper parties to such proceedings. Because Defendants Miller and Mark assigned their rights to the '824 patent to Defendant Suros, they argue, they have no economic interest and are therefore not proper parties to this litigation.[4]

"The validity of a patent requires that the inventors be correctly named." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349, 47 USPQ2d 1657, 1662 (Fed. Cir. 1998). However, pursuant to § 256, if through error an inventor is not named in an issued patent, and such error arose without any deceptive intention on the putative inventor's part the Court may "order correction of the

---

[4] The Court must make a point about style and substance. In terms of style, all lawyers' conduct must be "characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms." Seventh Circuit Standards for Professional Conduct, 1991. ("In fulfilling our duty to represent a client vigorously as lawyers, we will be mindful of our obligations to the administration of justice, which is a truth-seeking process designed to resolve human and societal problems in a rational, peaceful, and efficient manner.") Both parties' briefing of this case—particularly with respect to interpreting the *Chou* case—is unnecessarily scathing; the tone of both briefs undermines not only professional civility but also effective advocacy. That said, with respect to substance, the Court agrees that Defendants are attempting to create an artificial exclusionary rule with respect to who can be subject to a § 256 suit.

patent" without invalidating it. *Chou*, 254 F.3d at 1358; *see also* 35 U.S.C. § 256. Section 256 thus "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Fina Oil & Chemical Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997). This statute was intended by Congress to be interpreted "broadly" as a "savings provision." *Chou*, 254 F.3d at 1358. Accordingly, a putative inventor may bring a § 256 action even if he has no economic stake in the outcome. *Id.*, at 1359. And once a putative inventor has sued to correct inventorship, parties with an economic stake in a patent's validity are entitled to be heard—even over those objections. *Chou*, 254 F.3d at 1359; 35 U.S.C. § 256 ("The Court . . . may order correction of the patent on notice and hearing of all parties concerned.")

Despite Defendant Miller's and Defendant Mark's argument that their assigned economic interest in the patent renders them unconcerned parties to the litigation, the Court cannot accept that two named inventors on a patent should not be heard on the inventorship proceedings regarding that patent. As Plaintiff aptly states, it would be absurd to suggest that the notice requirement built into § 256 means that if two inventors conspire to keep a third inventor's name from a patent, and the two inventors assign the patent to a third party, the non-named inventor cannot add the two inventors in a § 256. Indeed, the notion that a party could simply create a corporation and assign his rights away to shield himself from liability runs afoul of the inclusive policy that § 256 is intended to uphold. *See, e.g., id.* at 1358.

Plaintiff's Amended Complaint alleges that Plaintiff is a co-inventor of the patent; that he was not listed as an inventor; and that failure to name Plaintiff as an inventor occurred "without deceptive intent on [Plaintiff's] part under 35 U.S.C. § 256." It further alleges that Defendants Miller and Mark were responsible for this error and continue to profit from it, in part through

Defendant Suros, over which Defendants Miller and Mark allegedly maintain ownership and control. [Dkt. 12 at ¶¶ 4, 5, 54.]

The Court therefore finds that Plaintiff's Amended Complaint states a claim for relief under § 256, and that Defendants Miller and Mark have enough stake in the outcome of this inventorship determination that—even over their objections—they are proper parties to this case.

**B) State Law Claims as to All Parties**

The parties agree that, to the extent that Plaintiff states a claim against all parties under 35 U.S.C. § 256, this Court has supplemental jurisdiction over the remaining counts (Counts II-IV) because they arise out of the same operative set of facts that gave rise to Count I.[5] Having found that Count I of Plaintiff's Amended Complaint states a § 256 claim (against all four Defendants), the Court may exercise supplemental jurisdiction over the related state law claims. 28 U.S.C. § 1367.

Defendants argue that Plaintiff's state law claims should be dismissed because they are time-barred by the applicable statute of limitations. In response, Plaintiff argues that his state law claims are governed by a six year statute of limitations; furthermore, Plaintiff argues that the statute of limitations has not begun to run, and that even if it had, the expiration date has been extended.

---

[5] Defendants Mark and Miller argue that insofar as Count I fails to state a claim against them, Plaintiff's state law claims should be dismissed pursuant to 12(b)(1) because the Court would not have supplemental jurisdiction over them as against Defendant Miller or Defendant Mark. [Dkt. 39 at 8.] Defendants make no argument, however, that the state law claims and the federal claim derive from different operative facts. *See, e.g., Hansen v. Board of Trustees of Hamilton Southeastern Corp.*, 551 F.3d 599, 606 (7th Cir. 2008). Having already found that a case or controversy exists between Plaintiff and Defendants Miller and Mark, the Court will exercise supplemental jurisdiction under 28 U.S.C. § 1367.

### 1. Applicable Statute of Limitations

First, Plaintiff argues that a six-year statute of limitations applies to his state law claims, [dkt. 40 at 4], because his state law claims are based first and foremost on a patent action, not a fraud action: "Fraud is supplemental to the patent core," and "the patent aspect controls and guides everything toward a six-year window." [Dkt. 42 at 11.]

The Court notes, however, that Plaintiff's Amended Complaint offers two distinct theories of liability under Count II: statutory fraud, based on the crimes of deception and misrepresentation under § 35-43-5-3 and "criminal mischief" under § 35-43-1-2. The statute of limitations in Indiana for claims based upon either theory is two years. *See* Ind. Code § 34-11-2-4; *see also* Ind. Code § 35-41-4-2. Moreover, as will be discussed more fully below, even if Plaintiff had a six year window within which to file Count II, he pleaded facts that make it clear that his cause of action accrued well over six years ago.

The statue of limitations governing Count III (unjust enrichment) and Count IV (accounting) "should be ascertained by reference to the nature of the harm alleged rather than by reference to theories of recovery." *Whitehouse v. Quinn*, 477 N.E.2d 270, 273-274 (Ind. 1985). In this case, Counts III and IV are based on the same fraud and misappropriation allegations giving rise to Count II—in other words, the conduct underlying the latter claims is the alleged fraud and injury to Plaintiff's intellectual property. Therefore, a two-year statute of limitations applies to both. *See Cincinnati Life Ins. Co. v. Grottenhuis*, 2011 WL 1107114, *9-10 (S.D. Ind. 2011) (finding two-year limitations period for conversion of property also applies to related unjust enrichment claim);[6] *see also* Ind. Code §34-11-2-4 (two year limitations period applies to

---

[6] In a single sentence, Plaintiff argues that his unjust enrichment claim is governed by the six-year statute of limitations applicable to *quasi* contracts. [Dkt. 42 at 12.] The six-year statute of limitations, however, only applies to unjust enrichment claims in the context of an unwritten

injuries to personal property); *KnowledgeAZ, Inc. v. Jim Walters Resources, Inc.*, 617 F.Supp. 2d 774, 792 (S.D. Ind. 2008) (two year statute of limitations period applied to claim of injury to intellectual property).

### 2. Failure to Timely File

In light of the two-year statute of limitations, the Court must determine whether Plaintiff's complaint was timely filed.

"A [Rule 12(b)(6)] motion to dismiss may be granted when a plaintiff has pled facts which establish a statute of limitations defense as a matter of law." *Viera v. Eli Lilly & Co.*, No. 09–CV–495, 2010 WL 3893791, at *5 n.3 (S.D. Ind. 2010) (citing *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) ("[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads himself out of court by alleging facts that are sufficient to establish the defense.")

In this case, the two-year statute of limitations begins to run when "the plaintiff knows, or in the exercise of ordinary diligence could have discovered, that he had sustained an injury as the result of the tortious act of another." *Farmers & Merchants Bank v. Putnam*, 2009 U.S. Dist. LEXIS 33724, *13 (N.D. Ind. 2009).[7]

In his Amended Complaint, Plaintiff asserts that no later than September 8, 2004, he "discovered that Suros' '824 Patent issued, without Schwindt being named as a co-inventor," [dkt. 12 at ¶ 32]; that he believed that he was a "significant contributor to many of the features

---

contract. Ind. Code § 34-11-2-7 (six year statute of limitations for "contracts not in writing"). Where, as here, the unjust enrichment claim is related to alleged misappropriation of property, a two-year limitations period applies. *See Cincinnati Life Ins. Co. v. Grottenhuis*, 2011 WL 1107114, *9-10 (S.D.Ind. 2011).

[7] Plaintiff argues that "the question of when a cause of action accrues is generally an issue to be resolved by the jury, citing to *Hildebrand v. Hildebrand*, 736 F. Supp. 1512, 1522 (S.D. Ind. 1990). *Hildebrand*, however, concerns a latent injury and is inapplicable to a case such as this where the plaintiff admits actual knowledge of the harm.

claimed" in the '824 patent, [*id.* at ¶ 29]; that he filed his own application, [*id.* at ¶ 32]; and that he filed a request for an interference to be declared against the '824 Patent to "correct Miller and Mark's conduct," [*id*. at ¶ 33]. But Plaintiff did not file this suit until January 21, 2011, over six years later, well after the statute of limitations had expired.

Because Plaintiff pleaded facts indicating that he knew about the alleged cause of action and did not timely file suit, the Court finds that the state-law claims are time-barred.

### 3. Doctrine of Continuing Wrong

Plaintiff argues, however, that under the doctrine of continuing wrong, the statute of limitations on his state court claims has not yet begun to run. [Dkt. 40 at 3.] Specifically, he argues, Defendants "continue to assert rights they do not have and continue the wrongful conduct against Plaintiff. . . by fail[ing] to acknowledge Plaintiff's rights" to the '824 patent. [*Id.* at 3-4.] "Every day that Defendants continue to challenge or attempt to assert claim over property that doesn't belong to them is the quintessential continuing wrong." [*Id.* at 4.]

Under Indiana law, the doctrine of continuing wrong applies "[w]hen an entire course of conduct combines to produce an injury . . . ." *Frady v. Hedgcock*, 497 N.E.2d 620, 622 (Ind. Ct. App. 1986); *Montgomery v. Crum*, 161 N.E. 251 (Ind. 1928); *Craig & Landreth, Inc. v. Mazda Motor of America, Inc.*, 744 F,Supp 2d. 818, 830 (S.D. Ind. 2010). This doctrine delays the running of the statute of limitations until the wrongful act ceases, allowing the plaintiff to file suit within normal statutory confines after that point. *Ayers v. Marathon Ashland Petroleum, LLC*, 2005 WL 2428205 at *3 (S.D.Ind.2005) (citing *Boggs v. Tri–State Radiology, Inc*., 730 N.E.2d 692, 699 (Ind.2000)).

But the doctrine does not delay the statute of limitations "if the Plaintiff learns of facts that should lead to the discovery of a cause of action, even in the event that the relationship

14

[between the plaintiff and the tortfeasor] continues afterward." *Craig & Landreth, Inc.*, 744 F. Supp. 2d. at 830; *C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 645 (Ind.Ct. App. 1999); *see also Hildebrand v. Hildebrand*, 736 F.Supp. 1512, 1517 (S.D. Ind. 1990) (a claim accrues "when resultant damage [is] ascertained or [is] ascertainable by due diligence"); *see also Martinez v. Caesars Riverboat Casino, LLC*, 2009 WL 426045 (S.D. Ind. 2010) (finding that continuing wrong doctrine does not apply where plaintiff knew of facts giving rise to his causes of action when they occurred); *see also Parks v. Madison County*, 783 N.E.2d 711, 719 (Ind. Ct. App. 2002) (the continuing wrong doctrine "does not mean [] that the plaintiff may sit idly by if he discovers facts that alert him that he has a cause of action.").

Plaintiff cites *Rowe, Farrell*, and *Garneau* for the proposition that the doctrine of continuing wrong prevents the applicable statute of limitations from running until Defendants cease their wrongdoing. *Rowe v. Gatke Corporation*, 126 F.2d 61, 66 (7th Cir. 1942); *Farrell v. Geisler*, 505 N.E.2d 137, 139-140 (Ind. App. Ct. 1987); *Garneau v. Bush*, 838 N.E.2d 1134 (Ind. App. Ct. 2006). None of those cases, however, suggests that the doctrine of continuing wrong applies where a plaintiff has actual knowledge of the facts giving rise to his claim.

In *Rowe*, the plaintiff worked for seven years in a room filled with asbestos-laden dust particles without ventilation until he became completely disabled. *Id*. at 63. His employer's negligence in failing to provide a safe working environment persisted until he was eventually fired. *Id.* at 66. Despite the fact that the plaintiff knew he worked in a dusty environment, plaintiff "had no knowledge of the danger to which he was exposed in the dust-filled room." *Id*. Therefore, the *Rowe* court determined that the plaintiff's cause of action accrued on the date he was fired, which was also his date of last exposure. *Id.*

Likewise, the respective courts in the *Farrell* and *Garneau* cases, both of which involved medical malpractice claims, acknowledged that the 2-year statute of limitations for medical malpractice actions would only be delayed where a plaintiff had not discovered and could not have discovered through reasonable diligence the facts giving rise to the cause of action. *Ferrell*, 505 N.E.2d at 139; *Garneau*, 838 N.E.2d at 1141.

Contrary to those cases, Plaintiff's Amended Complaint establishes that he had actual knowledge of the harm giving rise to his claim no later than September 8, 2004. In light of the consistently applied principle that actual knowledge prevents the continuing wrong doctrine from delaying the accrual of a claim, the Court finds that this doctrine does not save Plaintiff from pleading himself out of Court.[8] Even if a six-year statute of limitations applied, then, the cause of action accrued on September 8, 2004. To be timely, Plaintiff would have had to file this suit no later than September 8, 2010. Since Plaintiff did not file his initial Complaint until January 2011, he missed the expiration date of either statutory period.

### 4. Tolling of the Statute of Limitations

Finally, Plaintiff argues that the limitations period his state-law claims was tolled by his efforts to address the inventorship dispute in the Patent Office and by his bankruptcy filing.

### a. Other Litigation

Plaintiff first argues that the statute of limitations has been tolled since he filed his '395 application and requested an interference proceeding concerning the '824 patent. [Dkt. 40 at 4.]

---

[8] In a single footnoted sentence, Plaintiff claims, "Defendants gloss over or confuse that two of the three counts are equitable counts where discussion of timeliness should be analyzed under equitable principles rather than legal principles." [Dkt. 42 at 10.] Plaintiff cites nothing in support of this proposition, nor does he direct the Court to the counts he is talking about. As the Seventh Circuit has repeatedly held, "a skeletal argument, really nothing more than an assertion, does not preserve a claim" and is "properly treated as waived." *U.S. v. Aguilar*, 400 Fed.Appx. 85, 4 (7th Cir. 2010). The Court will not construct an equity argument for Plaintiff and finds this argument waived.

A patent owner may avoid the consequences of what would otherwise be an unreasonable delay in filing suit by establishing that he or she was engaged in "other litigation." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A,* 944 F.2d 870, 876-877 (Fed. Cir. 1991). However, interference proceedings before the Patent Office do not toll statute of limitations for related claims where the outcome of the interference will not provide complete relief. *See Brunswick Corp. v. Riegel Textile Corp*. 752 F.2d 261, 269 (7th Cir. 1984).

Here, the issue before the Patent Office is simply whether Plaintiff should have been named as an inventor on the '824 patent. [Dkt. 35-1 at 2.] Plaintiff's state law claims in the instant case seek different relief and involve distinct factual issues. Because the interference proceedings pending in the USPTO are distinct from the state law claims, the "other litigation" does not toll the statute of limitations on Plaintiff's state law claims.

### b. Plaintiff's Bankruptcy Filing

Plaintiff also argues that the expiration of the statute of limitations was extended 11 months because he filed personal bankruptcy in January 2010; the claim against Defendants was part of the bankruptcy estate; and an order allowing the claim to proceed on terms acceptable to the estate was not entered until December, 2010. [Dkt. 40 at 5-6.]

As an initial matter, an 11-month extension would not save Plaintiff from pleading himself out of Court, since he discovered the wrong more than six years before filing this suit. Furthermore, although the bankruptcy laws in § 108(a) provide for an extension of the statute of limitations to a trustee involved in a bankruptcy proceeding, *In re Johnson*, 2009 Bankr. LEXIS 2260 at *5-6 (Bankr. S.D. Ill. 2009), that extension does not apply to the debtor. *Id.* at *9 ("Affording the debtor the benefit of an extended statute of limitations in this case does nothing

to advance the purpose of the statute and in fact, would give the debtor additional time to file suit merely because she filed bankruptcy.").[9] Here, Plaintiff is the debtor.

The Court therefore finds that the other litigation did not toll the statute of limitations, and that even if it did, it would not save Plaintiff's claims from being time-barred.

### C) The Surviving Federal Claim

The parties agree that the interference action currently pending before the USPTO is potentially dispositive of all issues in this matter, and that this Court should stay litigation on the surviving claims until the USPTO has resolved it. [Dkt. 39 at 6 ("[S]urviving claims should be stayed pending [Plaintiff's] interference proceeding before the U.S. Patent Office."); dkt. 42 at 1 ("Plaintiff does not oppose [] Defendants' request that the case be stayed pending resolution of the Interference proceedings currently pending at the United States Patent and Trademark Office.).]

In determining whether to stay the case, the Court largely considers three factors: "(1) whether the litigation is at an early stage . . . or whether a stay will reduce the burden of litigation on the parties and the court; . . . (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, and (3) whether a stay will simply the issues in question and streamline the trial." *Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.,* 2009 U.S. Dist. LEXIS 35121, *7-8 (N.D. Ind. Apr. 24, 2009).

Here, each of the factors weighs in favor of staying the § 256 litigation. First, the instant case is in its earliest stages—discovery has not begun, and no trial date has been set. Second, Plaintiff will not suffer any prejudice or tactical disadvantage if this case is stayed; indeed,

---

[9] Moreover, even if a statute of limitations expires during the pendency of a bankruptcy, the cause of action "is not revived when it ceases to be the property of the estate and the debtor may not pursue [it]." *See Meiburger v. Ocwen Fed. Bank FSB (In re Marshall)*, 307 B.R. 517, 520 (Bankr. E.D. Va. 2003).

Plaintiff requested the USPTO adjudication himself and agrees that a stay pending its outcome is proper. Finally, the USPTO's adjudication of Plaintiff's inventorship claims will either dispose of or narrow the issues in this litigation. In light of those factors, and the USPTO's expertise in handling inventorship disputes, the Court will decline to pass on the merits of Plaintiff's remaining federal claim until the resolution of the inventorship proceedings before the USPTO.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendant Corporations' Motion to Dismiss and **DISMISSES** Counts II-IV of Plaintiff's Amended Complaint (the state law claims) as against them. [Dkt. 34.] The Court further **GRANTS IN PART AND DENIES IN PART** Defendants Miller and Mark's motion to dismiss the complaint in its entirety; the Court **DISMISSES** Counts II-IV (the state law claims); the Court further **ADMINISTRATIVELY CLOSES** this case with respect to Count I (the § 256 claim) while the matter is pending before the USPTO. [Dkt. 37.] The Court will reopen this case upon a motion by either party, made within **60 days** of the issuance of the USPTO's decision regarding the '824 patent.

08/26/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Victoria L. Cain
BINGHAM MCHALE LLP
vcain@binghammchale.com

Lee F. Grossman
GROSSMAN LAW OFFICES
lgrossman@grossmanlegal.com

Mark M. Grossman
GROSSMAN LAW OFFICES
mgrossman@grossmanlegal.com

Kristin L. Murphy
RADER FISHMAN & GRAUER PLLC
klm@raderfishman.com

Lisa J. Pirozzolo
WILMER CUTLER PICKERING HALE AND DORR LLP
lisa.pirozzolo@wilmerhale.com

R. Terrance Rader
RADER FISHMAN & GRAUER PLLC
rtr@raderfishman.com

Todd Arthur Richardson
LEWIS & KAPPES
trichardson@lewis-kappes.com

Joseph Peter Rompala
LEWIS & KAPPES
jrompala@lewis-kappes.com

Steve C. Silvey
ATHENA ATTORNEYS AT LAW LLC
stevesilvey@athena1.com

Wayne C Turner
BINGHAM MCHALE LLP
wturner@binghammchale.com

Jonathan W. Woodard
WILMER CUTLER PICKERING HALE & DORR
jonathan.woodard@wilmerhale.com